ARKANSAS RAILROAD COMPANY *v.* THE NEW YORK CENTRAL
RAILROAD COMPANY.

4-4871

Opinion delivered December 20, 1937.

*A. J. Johnson,* for appellant.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for
appellee.

GRIFFIN SMITH, C. J. The Lincoln circuit court, sitting as a jury, gave judgment against appellant for $570.66. It was alleged that between May, 1929, and January, 1934, appellee, at the instance of appellant, hauled and caused to be hauled certain freight, and that the indebtedness was due for such service.

Based on methods of settlement prevailing prior to 1934, appellee had remitted to appellant $1,701.20, covering forty-three separate shipments. Appellee alleged that after settlements had been made, an audit of interline freight apportionments showed that overpayments made to appellant amounted to $570.66. Correction sheets were sent appellant, with a request that the overpayment be refunded.

Soon after the first correction sheet was sent, Clyde E. Fish, vice-president in charge of traffic accounts for the appellant company, wrote appellee. The amount of the item then in question was $34.35. In his letter, written August 23, 1932, Mr. Fish said:

"Wish to advise that this account is covered by our voucher No. 1669, dated June 24, 1934, which is being held in our office on account of our financial inability to meet other than current items. We are trying to make some. financial arrangements to take care of these items, and until we do it will be necessary that same be held in abeyance, or until business with us makes some improvement. We regret exceedingly our inability to meet this and similar items in the usual manner, and assure you that the same will be taken care of just as quickly as it is possible for us to do so."

On October 21, 1932, Mr. Fish, in response to a letter from appellee, again wrote, and referred to the former letter. He wrote appellee in April, 1933, suggesting that if appellee would use its influence with the purchasing department of the New York Central Railroad Company to purchase fifteen cars of ties, or other lumber products from producers located on appellant's line, "We would allow or pay over to you 100 per cent. of our gross earnings on the movement or tonnage until this account is entirely paid."

On February 3, 1934, Mr. Fish wrote appellee "In connection with balances due on correction accounts." After proposing that appellant should furnish certain information to appellee, the letter concluded with this request: "I would appreciate your holding this matter up until you are furnished with the above information, and assure you that it will be forwarded just as soon as we are able to complete our records for the year 1933."

When suit was filed, appellant answered, denying the obligation. It also pleaded the statute of limitations. Its contention is that the correction sheet, which shows that appellant was entitled to $1,130.54 instead of $1,701.20, is incorrect; that the agreement under which the shipments were made was that settlement should be on a percentage basis, but that in making the cor-

rections and surcharging appellant's accounts, settlement is computed on a per hundred basis.

By deposition Virgil C. Cox, general accountant in the office of the auditor of interline accounts for appellee company, testified that the balance of $570.66 was correct, and that the bill was rendered according to usual railway accounting procedure. He further stated that no intimation had been received that the accounts were not correct.

While Mr. Fish was testifying for appellant, a number of questions were asked by the court, as follows:

"Q. These gentlemen testify positively that your company owes this amount of money, $570.66. Now, do you deny that you owe that? A. I admit it is correct according to their statement.

"Q. Well, do you contend it is wrong—the statement? A. No, sir. I don't contend that it is correct or wrong, either. I haven't checked these correction accounts. Originally these items were settled.

"Q. Just what is your attitude about it? You don't claim you have paid it to them, do you? A. No, sir.

"Q. Do you claim they are wrong in making that demand—that you don't owe it? A. No, I don't make that claim.

"Q. The point I am trying to make is this: If you thought their demand on you was wrong, why didn't you tell them so, instead of telling them you were in financial difficulty and would settle as soon as you could? A. Well, of course, if we had had the money I expect we would have settled without raising any question about it, because the railroads work more or less on a gentleman's agreement on the division of their revenues."

It is quite clear from the evidence that there was no written agreement covering apportionments or division of interline freight charges. As Mr. Fish expressed it, the various transportation companies work on a gentleman's agreement as to such divisions: that is, the custom prevailing generally seems to have been the basis of settlements. This being true, the record here does not justify this court in saying, as a matter of law,

that such rule or agreement was violated, or that substitution of the "per hundred" charge for a "percentage charge" was an arbitrary act not impliedly concurred in by appellant.

We are also of the opinion that the letter written by Mr. Fish on August 23, 1932, was sufficient to toll the statute of limitations. He there said: "I assure you that this and similar items will be taken care of just as quickly as it is possible for us to do so." While it might be argued that this is a conditional promise, maturing only when appellant's finances permitted payment, such inability is not pleaded, nor is the proof sufficiently comprehensive to show that there was no period within three years from the time appellant's letter was written in August, 1932, when the account could not have been paid.

The trial court was correct in rendering judgment. Affirmed.